This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Donald C. Hudson and Justice Liam C. Brennan. The case is number 219-0232. In re Marriage of Susan Coates, Petitioner, Appellee, and Cross-Appellant versus Robert K. Coates, Respondent, Appellant, and Cross-Appellee. Arguing for the Appellant, Cross-Appellee, Jason Adas. Arguing for the Appellee, Cross-Appellant, Michelle Dahlquist. Good morning, this is Justice Burkett speaking. We want to thank you all for agreeing to conduct oral arguments remotely. Before we begin, let me make a few comments about our format today. Just as if we were in the Elgin Courthouse, you will be given your regular allotted time. When you are not arguing, as Jeff pointed out, please mute your phone. In this case, there is a cross-appeal. So Mr. Adas, the Appellant, Cross-Appellee, will have 15 minutes for the main argument. Ms. Dahlquist, the Appellee, Cross-Appellant, will have 20 minutes for the main argument. The Appellant, Cross-Appellee, will have 10 minutes for rebuttal. The Appellee, Cross-Appellant, will have 5 minutes for rebuttal. As you heard, the signal will be operated by our Clerk of the Court, Jeff Kaplan. Mr. Kaplan will let you know by the signal when there are 5 minutes remaining in your main argument. The purpose of the 5-minute signal is to ensure that there will be time for questions from our panel. As is our practice in the Second District, we have all read the briefs and we are familiar with the facts. What will be different this morning is that we will not interrupt your argument with questions as we usually do. Conducting oral arguments remotely makes it awkward to proceed in that manner, so we will save our questions until you complete your argument. Keep in mind you do not need to use all of your time. Certainly, if you complete your argument before the signal, invite us then to ask questions. We remind you that no one except the Clerk of the Court is permitted to record this proceeding today. Do either of the lawyers have any questions about our format today before we begin? No questions. I know you're on. Very well then, Mr. Adas, you may proceed. Thank you very much. May it please the Court. Good morning, Your Honors. On behalf of Robert Coates, we are requesting this morning that the Court reverse the trial court's order of February 27, 2019, increasing Susan Coates' maintenance from $2,500 per month to almost five times greater, $12,058 per month. And we submit to Your Honor that there are two fundamental abuse of discretion that took place in this case that mandate a reversal. The first was the finding that there was a substantial change in Susan's expenses and Robert's income, which was precipitated by considering evidence prior to the entry of the July 2016 order in violation of statute and common law. And the second error was an arbitrary calculation of maintenance that resulted in a windfall for Susan without an evidentiary basis. I'd like to first address the substantial change in circumstance and the findings of the Court. The Court found as part of its decision that the only expenses at the time of the entry of the July 16 order that Ms. Coates had were her pool expenses and utilities for the former marital residence, which was the conclusion that was blind by the record. Although Susan was receiving inpatient treatment at the time of the order, there was nothing in the record to support the conclusion that the $2,500 per month maintenance was tied to her hospitalization. The order doesn't state as much. And if it was meant to be a temporary order, it would have said so, and either a date would have been set for further proceedings after her discharge, or there would have been a reservation of the issue at a later date. It's noteworthy that Susan didn't subsequently file a motion to modify the $2,500 per month order until some 17 months later in December of 2017. So, in fact, the only logical reading is that the initial unallocated family support award of $5,583 per month for Susan and their three children, which was pursuant to their judgment for dissolution of marriage, and also occurred at a time that Susan had a majority of the parenting time with the parties' three children, was reduced roughly in half to account for the fact that Rob was taking on responsibility solely for the children upon the entry of that order. In fact, Susan's own testimony was that she had no increases in her household expenses since the entry of the 2016 modification order, other than discretionary expenses and proving her new residence, having sold the marital residence that she was awarded in the judgment and purchasing a new one. And, in fact, her real estate taxes and utilities had decreased. Ms. Coates' testimony was that she had spent $180,000 to $185,000 in 2018 in connection with her personal expenses to demonstrate that the maintenance that she was receiving was inadequate. And we contend that that was not supported by the record. Note, she did introduce records from Morgan Stanley reflecting the reduction of her accounts, but produced no account statements or credit card statements or any other evidence demonstrating her use of the money. So the mere reduction of the accounts doesn't constitute credible evidence of an increase in her expense needs. There was simply no evidence as to how that money was spent, whether it was spent on attorney's fees or improvements to her home or other categories that would not constitute a substantial change in circumstances warranting an increased maintenance award. The court also violated the time period that was permissible to consider in determining whether a substantial change had taken place. We know that it's the party seeking a modification, bearing the burden to prove that a change in circumstances had occurred. But where a modification has been sought more than once, the trial court is to consider only the facts that occurred since the last modification hearing to alter the award only upon showing that a substantial change of circumstances since that date. And that is pursuant to this court's ruling in remarriage of Connors. In Connors, the court found that a modification proceeding, in a modification proceeding, parties are allowed to present only evidence which goes back to the latest petition for modification to avoid relitigating matters already settled, noting that a maintenance award is ratio to CADA to the facts at the time the award was entered. And that's supported by in remarriage of Anderson. The trial court repeatedly violated this restriction by allowing evidence predating the July 9th, 2016 order. And in some instances, explicitly relying on it and finding a substantial change in circumstances. And just reviewing some of the offending evidence, the court accepted evidence relating to Robert and his fiance's living arrangement at the time of the entry of judgment in 2015. The court allowed evidence regarding Susan's work history dating back to the 1990s. Of particular interest, the court allowed testimony regarding Robert's termination from his employment in 2015. And when an objection from trial counsel was raised, the objection was overruled and the court stated, I think this could go to the change in circumstances in the time of judgment until the modifications that followed, demonstrating a lack of appreciation for the time period that was permissible. The court also accepted Robert's severance agreement from 2015 into the record. And really of crucial importance, the court accepted the evidence as tax returns that predated the divorce in 2012, 13, and 14, and then relied on portions of those tax returns in fashioning not only the finding of the substantial change in circumstances, but the ultimate maintenance amount awarded. The court finally also accepted extensive testimony regarding Susan's suicide attempt and hospitalization, which took place prior to the entry of the order sought to be modified in the July 2016 order. And all of this evidence was presented in furtherance of the arguments that there had been changes in Susan's expenses and Robert's income, all of which were improper under the Holdings and Connors, Anderson, and SD. And if the court had limited the consideration of evidence from only the time period between July 19th, 2016 to the close of proofs in January 2019, the court would not have been able to conclude that there had been either an increase in Robert's income or increase in Susan's expenses. But even if you accept the notion that Robert's income had increased, and that had been demonstrated, the murability alone, the K-more maintenance, does not create an entitlement to a maintenance increase that's pursuant to in re the marriage of SD. There must additionally be a change in the expenses of the support recipient. And here, during the operative period, Susan testified that she continued to own assets of approximately $2 million, still lived in a large four-bedroom home, her real estate taxes had decreased, her utilities decreased, some of the expenses for the children that she had claimed under financial affidavit she was no longer incurring, and the only household expenses that had increased during this period of time were expenses that she was incurring to improve a newly acquired residence, having sold the former residence which she had owned debt-free. Such discretionary expenditures do not establish a change in circumstances warranting an increase in maintenance that's pursuant to in re the marriage of Fazioli. Moreover, the court's findings that she made reasonable attempts at employment were similarly contradicted by the record. By her own testimony, she is employable. She testified that she knows she's a good teacher, knows that she could be hired as one, and needed to update her skills in order to be more marketable. Yet in 2017, she sent resumes to 13 school districts, but in 2018 and 2019, made no efforts whatsoever to become employed. She further abandoned updating her education that would increase her employability, stating that the $16,000 that it would cost to obtain that continuing education was too expensive, notwithstanding her $2 million net worth. The court also failed to consider at all the $30,000 of unearned investment income that she had available to her from her assets. So the evidence required to find a substantial change in Susan's expenses simply can't be found in the record. If we assume even further that Susan's expenses had an increase in her expenses had been established, calculation of the maintenance award was arbitrary and unreasonable. The only competent evidence of Susan's expenses were her financial affidavit. She claimed it was $6,857 a month, acknowledged that $790 of it she was no longer incurring. So her expense needs were $6,067 per month without consideration of her investment income or imputation for reasonable income that she can earn. The court initially correctly ruled that Mr. Coates' income exceeded the $500,000 guideline threshold, and he did not have to strictly apply those guidelines. And the court was free to apply his discretion. However, the manner in which he used his discretion had no relation to the evidence and resulted in a windfall and violation of this court's ruling and in rain but shelly. The court relied on one source of income from prior to the divorce from 2012 to 2014, used it as a benchmark to apply to the guideline formula, and concluded without evidence. Mr. Ades, you want to leave time for questions, don't you? I do. Wrap up your main argument. Thank you very much. Justice Hudson. In 30 seconds or less, with respect to lifestyle, all of the evidence presented was generic. It was not quantified. As a result of the lifestyle not having been quantified, not been provided without competent evidence, the court backed into a number that was two times what her stated expenses were in the financial affidavit that she submitted. And while I have more to say on the subject, I'd like to give time for questions, and I may be able to get my other comments in during that period. Thank you. Justice Hudson, your questions, please. Did you mean me? Justice Hudson. Go ahead. I'm sorry, I'm having a difficult time hearing. Hello? Go ahead, Justice Hudson. We can hear you now. The initial question. Is it true that the trial court didn't exceed the state? I'm sorry. I'm not sure. I'm not able to hear the question. Justice Brennan, you can go ahead with your questions while we're waiting for Justice Hudson to come back on. I actually do not have any questions at this time. All right. Very well. I will ask a few questions. You didn't really discuss, Mr. Reyes, our standards of review here, which often guide our analysis and the result. Tell us why the trial court's reasoning or rationale was arbitrary and capricious, why no one would agree with the trial court's rationale. Specifically on the calculation of the maintenance, because the formula that the court ultimately used and applied actually two different formulas, one for the maintenance and one for the child support, didn't bear a connection with the evidence. Because the evidence was that she had expenses at the time of the hearing of $6,000. But the award was $12,058, and there were no findings and no evidence, importantly, of the need for that money or that money representing a deficiency in lifestyle. So while there was generic testimony about what the lifestyle was during the marriage, there was no evidence presented that she was unable to do the things that she did previously. And if there was such deficiency, what it would cost in order to make up the difference. So it's definitionally arbitrary where there's no quantification of the alleged deficiency between the prior maintenance award and the lifestyle enjoyed during marriage, presuming that a change in circumstances had been proven. Let me ask you this about your raised judicata argument. Appley argues that this was not raised in the trial court and it's waived. Explain why it's not waived. Well, I think that while the words raised judicata were not used by trial counsel, the argument was repeatedly made that evidence relating to substantial change in circumstances were impermissible for any period prior to the entry of the order in 2016. So whether you call it time barred by common law or statute or whether you call it raised judicata, the outcome is exactly the same, that it offends the well-established rule to allow that evidence to have come into the record. So your argument is that you can make evidentiary objections during a trial and then after the trial argue raised judicata. That's your position? I'm saying that it was the same argument, that it was just an analogy for. There was an order that had been entered by the trial judge that had the case prior to the hearing that limited the period of time that evidence could be considered. And the case law is clear and was argued at trial and was objected as all of this evidence that predated 2016 was being offered, that it was not permitted by law. When we look at a substantial change in circumstances, we look at the status of the parties at the time of the entry of the order and compare that to the status of the parties at the time that the increase is requested, correct? That is correct. There is evidence in the record, is there not, that supports the trial court's finding that there was a substantial increase in Robert's income, correct? Is that correct? For purposes of, yeah, I'm going to say that is correct, yes. Okay, so where there is evidence in the record to support the trial court's findings, how do we find an abuse of discretion? Well, because as I indicated, and this is, again, in the whole of an in-ring marriage of SD, finding of an increase in income is not sufficient in and of itself to warrant an increase in maintenance. There needs to be an additional finding by the court that there is an increase in the needs or expenses of the maintenance recipient in order to justify such an award. And, in fact, in a marriage of SD, the maintenance award was rejected. The request for an increase was rejected, notwithstanding the fact that husband had a greater ability in that case to pay. In this case, Susan withdrew $180,000 to $185,000 from her brokerage account in 2018, correct? That's correct. The trial court concluded that that was the equivalent of accumulating debt, correct? That is correct. So isn't it settled precedent that a spouse seeking maintenance should not be required to sell her assets or sell his assets or otherwise impair his or her capital to maintain the standard of living that she was accustomed to during a marriage? That's absolutely true. But the interesting thing about the presentation of the evidence in this case is that while the evidence was presented showing withdrawals from the account during 2018, there was no evidence presented establishing how that money was used. So it required the court to make an evidentiary leap of faith that the money was being used for matter, you know, expenses that were attributable to lifestyle deficiencies. And there was no way of knowing that because her credit card statements weren't presented or any other form of proof as to how that money was spent. So your suggestion is that she was just doing this as a setup? Is that your suggestion? I'm not suggesting that it was a setup, but I am suggesting that it is a complete deficiency in evidence. I mean, it's not for the court to conclude that the money was spent for categories of expenditures that, you know, the court should find warranting an increase to a doubling of the increase of money to $12,000 a month. And it fits me. I'm sorry. She requested $25,000. The court awarded $12,000. That's correct. And during the marriage, home renovations and travel were custom – that was customary during the marriage, correct? There was general testimony to that effect. All right. That's all I have. Judge Brennan, anything else? Not for me at this time. Justice Hudson? Can you hear me now? Yes. Yes? Can you hear me? Yes. Yes. The question I had for Mr. Addis is, as we know, when somebody files a petition for the increase, there's a two-step process. On the first issue, the court determines whether there's been a substantial change in circumstances. And if the court finds that the petitioner has met his or her burden, they go on to consider whether and to what extent the support should be modified. All right. So is it your position, Mr. Addis, that the consideration of factors, evidence of what occurred in the marriage, the parties' lifestyles, is not relevant to either step of the analysis? No. I think that clearly it's not relevant to the analysis as to whether there was a change in circumstance from the last maintenance award to the date of hearing. But it may be relevant to the consideration of what the maintenance award should be once the substantial change in circumstances has been established. The issue there is the quality and the competency of the evidence. So I don't think that it was an error to consider lifestyle at all, but where there is no evidence such that the lifestyle deficiency that is alleged could be quantified. So, for instance, Ms. Coates asked for $25,000 in support. And she generally testified that the family home had been improved over a series of years and that the family vacationed together. But she placed no evidence as to what dollars per month would be required in order to make that difference in alleged deficiencies. So the result is what this court reversed in In re Machelli where there was a percentage order that was unrelated to a specific dollar figure of need and lifestyle of the support recipient. And this court reversed that percentage award, saying that it was arbitrary and was a windfall. And I would submit to you that this situation, the way that the trial court backed into the maintenance number is no less arbitrary than what took place in Machelli. Well, let me ask you this. You've alleged or alluded to the fact that the court went outside the confines of the parameters in considering evidence predating the order. Isn't it true that we can affirm on any basis appearing in the record? Is that correct? That is correct. The court allegedly or, you know, based on your allegation, departed from some of the considerations that you allege should have been considered. But we still believe the court did not abuse its discretion in making the determination of a substantial change in circumstances and its consideration of the factors. Wouldn't we still affirm? You would, although I think that I would phrase the question a little bit differently in the sense that it's not so much what the court didn't. Specifically to it's it's it's what was subject to. So, in finding a substantial change in circumstances, the court. Considered this historical income, and then relied on historical income in reaching. The maintenance, and as I said previously, if you focus solely on the evidence that could be considered, I'm not sure that you could find. I would submit that you couldn't find evidence in the record from 2016 to strike that from. Yeah, from 2016 to the close of truce in 2019 to support a finding that Susan's. Expenses had increased, but there have been a substantial change to her. It is true, isn't it? That the trial court on more than 1 occasion had stated in announcing its ruling on the substantial change that it was making the determination based on a change in circumstances. Since the entry of the 2016 agreed order, is that true? I think that that the answer is that the court made different. Announcements on that back, I think, in different places in the record, it indicated considering changes to circumstances and judgment, but in the order. Stated it was making the assessment based upon 2016 forward, but then also considered. Historical income information from 2012, 13 and 14. Let me ask you the final point of question, even if the court you're alleging conflated some factors, the court announced in its oral pronouncement that it was considering only those circumstances in the chain since the 2016 order. But you said at times the court went off and considered other improper factors. If there is sufficient evidence in the record to support the court's finding, notwithstanding this departure, you're referring to. Again, wouldn't be still from. The answer is yet and then the focus would be on whether or not the calculation of the maintenance award itself. Was arbitrary or whether it was based on competent evidence actually presented. And I would submit to you that the answer is no. That's all I have. Thank you. All right. Very well, any anything else anything. Not for me. OK, Miss Dahlquist. Proceed. Good morning, Your Honor. May it please the court. My name is Michelle Dahlquist of Ngozi Ndahlquist and I represent the Appalachian Cross Appellant Susan Coates. As as we we just went over, this was a maintenance modification as the primary issue with a two step process to occur. First, the petitioner bearing the burden of showing the substantial change in circumstances since last order. And second, once that that burden was met, what the proper amount of maintenance shall be. I'm mindful that your honors are all well aware of the fact there are a few facts I'd like to highlight, though, because I think that they are important for the arguments that I'm that I'm going to make here. And they are that this was a long term marriage. It was a 16 year marriage with three children. Susan was a stay at home mother since the first children, the twins were born, and that Robert was employed as a trader during the marriage and also as a business owner for holding various percentage interest in different restaurants in Naperville and Hawaii. The parties were divorced in June of 15. And at that time, Robert had been laid off from his employment with RSW only a couple months before. And it was also anticipated that his other related business, Bellvale, would also be dissolving. And that is that is acknowledged in the terms of the marital settlement agreement. And so then it was a few months after the divorce that Susan was in and out of the mental health treatment centers and that she had attempted to take her own life. And following that suicide attempt, she was hospitalized for over a month. And during that hospitalization, that is when the order was entered that modified the primary care of the children, terminated unallocated support, and set the $2,500 support award that's in question here. And that was approximately one year after divorce that that was entered. And at that time, as of July 2016, Robert was not yet earning the significant income that he had been historically making during the marriage. And that's something important that I'll touch on in a few different ways. Susan did file her petition to modify maintenance in December of 17 based upon the substantial changes of both Robert's income and her own. And what I'd like to point out about that is that counsel had alluded to the fact that Susan waited 17 months in order to file this motion. And that time period of delay does not matter. There's a recent case out of the 2nd District in remarriage of Izzo that specifically addresses that. The time difference that has occurred does not matter. It's simply whether there's a substantial change since the last order. How long it took her to file the motion is irrelevant. So here, the trial court did look at and thoroughly analyze the factors of 5-10 of the IMDMA when it supported the substantial change and modification, and also agreed that at least three substantial changes occurred since July 2016. Those have three categories. One being Robert's increase in income. Two, the change of his tax filing status. And third, the increase in Susan's needs and expenses. Either way you look at the first factor of Robert's income, whether you look at his distributions taken or total taxable income, it did significantly increase. The distributions he took from his primary operation went from $0 in 2015 to over $1.4 million in 2016, most of which was all after the entry of the 2016 order, and also, again, $1 million, over $1 million in 2017. And then even when you look at just the taxable income, not just the distributions, that also increased nearly $500,000 between 2016 and 17, or a 54% increase. What's important to note here, and this relates to the second factor once we get there, is that this increase in income is not new to the opponent's post-divorce life, as suggested in some of the case law that counsel cited here today. This increase is going back to a level of income that Robert earned during the marriage, which is specifically the time period that Section 504 is directing the court to look at. Robert earned significant income during the marriage at or around $1 million, and that supported a lavish lifestyle. In the last full year before he filed for divorce, 2012, he earned over $1 million. And really, his increase in income here merely resumed the level of income during the marriage and did not create some new windfall as set forth in the case that counsel cited here this morning. Now, although only one substantial change in circumstances is needed to meet the burden, I will run through the other two that the court has found. The second being that Robert had changed his tax filing status. He filed as an investor status in 2015 and then changed that to a trader status in 2016 and 2017. Susan's expert witness, Ms. Corso, explained the importance of this tax selection via her written report and testimony. By making this tax representation, the trial court accurately found that Robert treated Bellvale as a pursuit for the production of income as a livelihood as opposed to a long-term investment. And this fact shows that Robert reinvented the company Bellvale and treated it as a trading entity to earn income after the entry of the 2016 order. And third, Susan's needs and expenses did increase. Obviously, as counsel argues here today, this appears to be where Robert placed most of his focus. He nitpicks Susan's needs and expenses and argued that the trial court erred in its findings. But what Robert failed to focus on is the factual differences in Susan's needs and expenses since July of 2016 when Susan was hospitalized by suicide attempt. The trial court accurately found that Susan had nominal expenses when she was inpatient. Health insurance was covering most of her day-to-day needs. And she testified that the only outside expenses she was incurring was her monthly pool maintenance fees and utilities along with those health insurance premiums. She was not living outside of the hospital. She did not even have parenting time that she now does with the children. She was only focusing on living at that time. And as your honors questioned, Susan's deficit can be shown by looking at the overview of her spending. The $180,000 to $185,000 that was withdrawn in year 2018 alone, that was presented through a voluminous exhibit, which was not only the withdrawals that were taken from the account, but also, as counsel incorrectly argues here today, the exhibit itself does line items show every expense withdrawal that Ms. Coates made from the account. It has debit card transactions for every place that she used this money at. Because as she presented, this was an account that she could regularly be accessing to withdraw money. So it's simply incorrect that Ms. Coates did not provide, through evidence, the day-to-day expenses that were being withdrawn from that Morgan Stanley account. And she was not cross-examined that any of those expenses were unreasonable. Now, since the substantial changes had occurred since the entry of the last order, the trial court was then needed to analyze the determination of maintenance. And the trial court's maintenance decision here is not excessive or grossly inequitable to Robert. If anything, a higher level is warranted as set forth in our cross-appeal as it relates to the standard of living and lifestyle during the marriage. But in determining the appropriateness and the level of maintenance, the key here to look at whether it's excessive or inequitable is to look at the factors that are mandated in 5-504 of the IMDMA. And those specifically include the lifestyle of the marriage, the contributions the spouse made to the other's career, and any impairments the spouse may face by devoting time to domestic duties or foregoing employment during the marriage. So much of the evidence that Susan presented about the timeframe of the party's marriage was only being presented to support what the trial court was required to make findings on that are directed under 5-504. And as set forth in a supplemental order after the submission of Susan's response brief, a new case came out of the 3rd District, the Sebasti case, which specifically reversed the trial court's findings of precluding and disallowing evidence in a modification proceeding of a time period during the marriage for the same reasons that I'm presenting here today, being that they are directed to be considered under 5-505. So here, the relevant time period for the comparison of the lifestyle is the time of the marriage, not the short-lived, artificially reduced income that Robert was generating at the time that the July 2016 order was entered. There was evidence that there was an affluent lifestyle, and the court made such—I don't think he used the same affluent words, but did say that there was a high standard of living. They lived in what Susan described as an exquisite 6,000-square-foot house with five bedrooms, six bathrooms, four finished floors. The parties spent $400,000 renovating the house. They traveled extensively to Italy, Napa Valley, Mexico, and related places in the few years leading up to divorce, and regularly engaged in expensive activities. The appellant here cited zero cases to support a claim that this amount is excessive or grossly inequitable to Robert, given their marriage lifestyle. There were no cases cited where a spouse makes over $1 million a year and is paying anything less than taxable maintenance of $12,000 per month as ordered by the court after trial. Now, I'm mindful that non-guideline maintenance cases are very fact-specific and analyzed on a case-by-case basis per statute, but we did cite cases with similar high wage earners with corresponding high maintenance awards in our response brief, and those include the Heroy and Knorr decisions where maintenance was set at $27,000 and $17,000 based upon income levels at $1.1 million or 25% of the husband's cash flow. So there certainly is case law out there to be supporting high levels of maintenance with high historical wage earners during the marriage. Now, the appellant's second contention that was raised in the brief, although not yet raised today, is the court's determination that the appellant's conduct was willful and consummation. I won't speak on that very much then, but I do want to at least point out that the appellant is not arguing the amount of fees were unreasonable, but rather that willful and consummation finding. And I'd like to point out that neither Judge Cerny at the hearing on Robert's motion for involuntary dismissal, nor Judge Reedy agreed with Robert's interpretation of the judgment language that required him to produce copies of the tax returns, and that at best, Robert had a mistaken interpretation that is still not sufficient for cause or justification, or at worst, the totality of his actions by withholding tax returns and information from Susan and reinventing the business bell veil was a deliberate attempt to avoid paying properly calculated maintenance, and that either way, a finding of no compelling cause or justification was not an abuse of discretion. Now, today and throughout his brief, the appellant really tried to create confusion, presuming that the trial court was somehow confused by the relevant time period or also confused the evidence that was presented on review here. This continued reference to the judge's comment during a ruling on an evidentiary objection is really, it was one, it was a suicide attempt. The trial court accurately found that Susan had nominal expenses when she was inpatient. Health insurance was covering most of her day-to-day needs, and she testified that the only outside expenses she was incurring was her monthly pool maintenance fees and utilities, along with those health insurance premiums. She was not living outside of the hospital. She did not even have parenting time that she now does with the children. She was only focusing on living at that time. And as your Honor questioned, Susan's deficit can be shown by looking at the overview of her spending. The $180,000 to $185,000 that was withdrawn in year 2018 alone, that was presented through a voluminous exhibit, which was not only the withdrawals that were taken from the account, but also, as counsel incorrectly argues here today, the exhibit itself does line items show every expense withdrawal that Ms. Coates made from the account. It has debit card transactions for every place that she used this money at, because as she presented, this was an account that she could regularly be accessing to withdraw money. So it's simply incorrect that Ms. Coates did not provide, through evidence, the day-to-day expenses that were being withdrawn from that Morgan Stanley account. And she was not cross-examined that any of those expenses were unreasonable. Now, since the substantial changes had occurred since the entry of the last order, the trial court was then needed to analyze the determination of maintenance. And the trial court's maintenance decision here is not accepted or grossly inequitable for Robert. If anything, a higher level is warranted as set forth in our cross-appeal as it relates to the standard of living and lifestyle during the marriage. But in determining the appropriateness and the level of maintenance, the key here to look at whether it's excessive or inequitable is to look at the factors that are mandated in 5-504 of the IMDMA. And those specifically include the lifestyle of the marriage, the contributions the spouse made to the other's career, and any impairment the spouse may face by devoting time to domestic duties or foregoing employment during the marriage. So much of the evidence that Susan presented about the timeframe of the party's marriage was only being presented to support what the trial court was required to make findings on that are directed under 5-504. And as set forth in a supplemental order after the submission of Susan's response brief, a new case came out of the 3rd District, the Sadowski case, which specifically reversed the trial court's findings of precluding and disallowing evidence in a modification proceeding of a time period during the marriage for the same reasons that I'm presenting here today, being that they are directed to be considered under 5-505. So here, the relevant time period for the comparison of the lifestyle is the time of the marriage, not the short-lived, artificially reduced income that Robert was generating at the time that the July 2016 order was entered. There was evidence that there was an affluent lifestyle, and the court made such, I don't think he used the same affluent words, but did say that there was a high standard of living. They lived in what Susan described as an exquisite 6,000-square-foot house with five bedrooms, six bathrooms, four finished floors. The party spent $400,000 renovating the house. They traveled extensively to Italy, Napa Valley, Mexico, and related places in the few years leading up to divorce, and regularly engaged in expensive activities. The appellant here cited zero cases to support a claim that this amount is excessive or grossly inequitable to Robert, given their marriage lifestyle. There were no cases cited where a spouse makes over a million dollars a year and is paying anything less than taxable maintenance of $12,000 per month as ordered by the court after trial. Now, I'm mindful that non-guideline maintenance cases are very fact-specific and analyzed on a case-by-case basis per statute, but we did cite cases with similar high wage earners with corresponding high maintenance awards in our response brief, and those include the Heroy and Nohr decisions where maintenance was set at $27,000 and $17,000 based upon income levels at $1.1 million or 25% of the husband's cash flow. So there certainly is case law out there to be supporting high levels of maintenance with high historical wage earners during the marriage. Now, the second contention that was raised in the brief, although not yet raised today, is the court's determination that the appellant's conduct was willful and contemnatious. I won't speak on that very much then, but I do want to at least point out that the appellant is not arguing the amount of fees were unreasonable, but rather that willful and contemnatious findings, and I'd like to point out that neither Judge Cerny at the hearing on Robert's motion for involuntary dismissal nor Judge Reedy agreed with Robert's interpretation of the judgment language that required him to produce the copies of his tax returns, and that at best, Robert had a mistaken interpretation that is still not sufficient for cause or justification, or at worst, the totality of his actions by withholding tax returns and information from Susan and reinventing the business bell veil was a deliberate attempt to avoid paying properly calculated maintenance, and that either way, a finding of no compelling cause or justification was not an abuse of discretion. Now, today and throughout his brief, the appellant really tries to create confusion, presuming that the trial court was somehow confused by the relevant time period or also confused the evidence that was presented on review here. This continued reference to the judge's comment during a ruling on an evidentiary objection is really, it was one ruling that Judge Reedy himself corrected that he never did again throughout the trial. During all of the remaining evidentiary objections, he continued to use, and he used throughout his lengthy written ruling, the relevant time period for comparison, and nor did Susan even allege that the comparison time period was the time of the judgment. The evidence continued to be presented solely for the purpose of the second step in the process of the determination of the proper amount of maintenance. Now, on cross-appeal, Susan has, is arguing to this court that the trial court here did miscalculate robber's income from all sources during the relevant time period of the party's marriage when it set a cap, and that the result is that the award should have been higher. Now, gross income for purposes of maintenance in Section 504 of the INDMA means all income from all sources, and that's within the scope of the phrase of 505, the Child Support Statute. Whether an item constitutes income for purposes of maintenance is a question of law, and that's reviewed de novo, and that is pursuant to the Revola case that came out of the 2nd District in 2017. It is not the current income that the trial court miscalculated, but rather when it set the cap of robber's income for maintenance, the trial court considered robber's income from the last three years of the marriage of 2012 to 2014. When doing so, though, the trial court only considered robber's income from the entity Bellevale during that time period, but in fact, that was not the totality of robber's income sources at the relevant time. The evidence showed that between 2009 and 2015, robber's primary source of income comprised of two related income streams, and those were RSW and Bellevale. And so, therefore, by the trial court only taking Bellevale income to determine the cap, he only was looking at one-sixth of robber's income streams from his various business sources. And so the trial court's goal then of setting maintenance pursuant to the lifestyle simply was not met by only taking a fraction of the marital income. And thank you, and I will leave it at that for now and certainly welcome questions. Very well. Thank you, Ms. Dahlquist. Justice Hudson, your questions. I just have one for counsel. How do you respond to opposing counsel's argument that even though the judge had said he was basing the consideration of a substantial change in circumstances only from the date of the last agreed order, the record reflects that he did depart from that and at times considered factors that should not have been considered on that specific first step.  My response is that when the judge considered evidence prior to the entry of the July 2016 order, it was only being done to meet the factors and it was relevant to the factors that are laid out in Section 5504 on the second step of the analysis. As the court did in his lengthy written ruling, the trial court analyzed the factors and the facts that related to the time period of July 2016 to the present for the first factor. And those are the only facts that he used when analyzing the first step. And when the trial court then made the conclusion that Susan did meet her burden and did find substantial change since July of 2016, that is when the door was open for the judge to be considering those facts that all relate to Section 504 when determining the appropriate amount of maintenance. The two-step process, you're saying the court didn't conflate those factors. The court's consideration of those factors was based upon the statute that says when you consider to what extent to modify the order, the statute does direct the court to consider things such as the standard of living, the time that the party is seeking maintenance devoted to other duties or delayed career opportunities. So you're saying you acknowledge that that or you're arguing that that's correct only on the second point, the second factor. Correct, because this was not a proceeding that was bifurcated into two steps, nor is that the norm for these modification proceedings. The court is given the duty to take the evidence and apply it to which factors and which steps it relates to. And that was what was properly done here. All right, and could you tell us specifically in summary form how the court, again, erred in the calculation of maintenance of the increase was erroneous and not in the amount that you sought? Why did it abuse its discretion on that decision? Well, I would submit that it is not under the abuse of discretion, but it is under the review of a de novo review because of the fact that whether an item constitutes income for purposes of maintenance, that that is reviewed on a de novo basis. And here, the trial court, when it set the cap, was determining what Robert's income was at that relevant time period. And by excluding the income from five other business interests and areas of employment that Robert had during the marriage, that was a miscalculation of whether those items constitute income for purposes or not, for maintenance or not. And therefore, that should be a de novo review because the trial court laid out that its goal, in so many words, was setting maintenance pursuant to looking at the lifestyle and the standard of living during the marriage. And so by only calculating one of those six income sources, then it's artificially reducing what Robert's income was during the marriage. And so based upon the de novo review of whether or not these other items constituted income for purposes of maintenance, those should have been included. His related business, RSW, where he was a partner with the same man at the time that he was partnered with BelVal, that was excluded from the analysis, as well as the other restaurant operations that he had and real estate operations that he had that he was working for. And so those other areas of businesses and related business unemployment income, it was an error by the court to exclude those as income for purposes of maintenance. All right. I don't have any further questions at this time. Thank you. Justice Brennan, do you have any questions? Justice Brennan? I do not have any questions at this time either. Thank you, Ms. Dahlquist. Okay. Thank you. Ms. Dahlquist, some of the interests were restaurants, correct? They were. The other income. Well, given what we're going through right now, it's likely that those interests are going to be devalued, right? Correct. If I could speak to that. Go ahead. Well, what I would say to that, though, is that the purpose of that extra income right now would not matter for purposes of where the court set a cap, because right now what was presented at trial is that Robert's income from this one entity alone is more than what all six of these entities were at the time of the marriage. So by setting the cap, if you set the cap at the total income from all sources that he had during the marriage, these additional business interests would be essentially part of the exclusion of calculation after entry or at the time of the 2019 order. And there was also testimony that Robert was currently in litigation to dissolve his interests in those businesses. So for purposes of how even if those businesses were at a zero rate today at the time of the order, that was not focused on because the income from Bellevue alone was more than the six business interests combined at the time of the marriage. Thank you very much, Ms. Dahlquist. Mr. Adas, rebuttal. Thank you, Your Honor. I think that the major disagreement that I have with counsel's view of this case is a conflation between income and lifestyle. And I'm aware of no case where on a modification of maintenance or even, frankly, on a initial amount that was awarded this $12,000. And I don't believe the counsel could or the trial court could explain how it got to the $12,000 other than just creating this formula that I'm unaware of any other case having applied. Any more so than she could at $25,000. These are arbitrary numbers that are not connected to the evidence that was presented. And I would say to you that, you know, with respect to the Sadovsky decision, I think that the court that the that that decision is incorrect in the sense that it states that lifestyle is mandatory to consider in every case. What the 510 says is that you consider the 510 modification factors, and then you apply the applicable factors of 504. To say that lifestyle is a mandatory consideration reads the word applicable out of the statute. But I think it's a little bit of an academic discussion in this case, because I don't argue that the court has the discretion to consider lifestyle. But it's what is the quality of the lifestyle evidence that's presented that I would ask your honors to focus on. Is it possible to hear that generic testimony of lifestyle and then double the award that the petitioner claims that she needs in terms of her own expenses $6,000 without consideration of the other things I mentioned imputation and ability to earn income on her own. That's all I have. Thank you. Justice Hudson, any questions on rebuttals for Mr. Just briefly, Mr. Is it your position that the court did consider the relevant statutory factors, but simply misapplied them. I believe that that. Well, I think, as I argued, there was, I believe that there was error in a finding of a substantial change in circumstances in the 1st instance. If you accept that there was an appropriate finding of a substantial change, then there was a misapplication of the lifestyle factor. If that's in fact, the way that the court justified this retrofitted calculation, because the court didn't say, I find that there is a $6,000 deficiency in lifestyle and said, instead, it said that. I believe that income from Bellevue and 1213 and 14 is representative of lifestyle. I'm not sure how that can be supported because income doesn't equal lifestyle. This is these are parties that divided up approximately $5M of assets at the time of the entry of judgment. So, they obviously didn't spend all the money that they made. So there was a leap of logic there that I don't believe can be found anywhere in the record to support. Well, if the court misapplied 1 of the statutory factors, is it your position that that would automatically mandate a reversal. I'm, I'm saying that the, the, the number, the maintenance award was arbitrary. Because it cannot be associated with the evidence presented and that is what mandates the reversal. I believe that because there, I think there's an adequate explanation of it that the manner that the court. Double the financial affidavit expenses and increased the maintenance award 5 times from the July 16 award was based upon this notion of lifestyle. But didn't didn't have sufficient evidence to quantify it. So, instead, you know, pick a income number for the maintenance application that were. Prior to the entry of the divorce and prior to the entry of the modification order, and then used a different income number yet. The calculation of the child support, thank you. Thank you. I'm sorry. Thank you. That's all I have at this time. All right, thank you. Just Hudson. Mr. would you, wouldn't you agree that the original award was. Clearly insufficient for Susan to live in a lifestyle that she was accustomed to during the marriage. I would not, you know, the, the original award and the judgment. As I understand it is a product of a marital settlement agreement and is raised on that issue. My question is, how was how was she going to be able to live in a lifestyle that she was accustomed to during a marriage on that? Which was set when Robert's business was and he was losing income. The, because the focus of this litigation has been the modification. Of an order that came after the, the judgment, I can only make observations. Based about having read the record, but I can tell you that she was residing. In the marital residence that she described as being magnificent without a mortgage. And had approximately 2Million dollars. Of investable assets with which to derive additional income and I don't know that anyone. Well, strike that I can tell you that I don't. Have her financial affidavit from that period of time to know what she stated her other expenses work. So, I couldn't agree with that state 1 final question. I'm sorry, can you address the argument that the court aired and not considering all sources of income from Robert for Robert when he reset and recalculated the maintenance award? The way that I respond to that is that when when you are dealing with a modification proceeding. In cases with income and access to 500,000 dollars. The focus comes left on the. Income of the support pay or because you're not. Plug in playing numbers in a formula. You are evaluating the expenses, the needs and the lifestyle of the recipient. In determining whether or not a maintenance award is appropriate. So, I think that is, and this is what I was getting at earlier when I said that. There's a conflation here between income and lifestyle because we know that. Based upon the case that it may not matter whether or not someone's income increases or not. If the maintenance that is awarded is sufficient to cover the demonstrated needs and lifestyle of the recipient. So, the, the entire approach. Of, you know, looking back at. Income, I believe was erroneous to begin with. I think that the, that the court could have and should have considered current income. And reach the lower maintenance number, you know, based upon stated. These expenses and the evidence that was presented with respect to lifestyle. All right, thank you. Rebuttal. And this, this is only brief because I, I'm going to. You know, carefully limit my, my reply here to only the issues on the cross appeal. But I would like to point out once more with a little more detail. In the income that Robert had during the marriage that was not considered. The trial court is still, even if it's a non guideline case. Compelled to analyze and determine the payors. Total income when determining the proper amount of maintenance. And there was no findings as to why the judge would have intentionally excluded the related business interest. R. S. W. where Robert was employed on a day to day basis. Nor were there findings why the, the percentage of business interests and the income that were derived from those of the various restaurants and the real estate entity. Why those were excluded when, when looking at determining what the gross income was for purposes of a cap, what, what did the parties benefit from during the marriage? Whether it's benefiting by savings and retirement savings, whether it's benefiting by spending the money and lifestyle, there was no indication that the lifestyle. And that the standard of living during the marriage would be supported for Susan. If you only analyze it on less than five hundred thousand dollars, it was clear when you looked at the last few years of the marriage that Robert had been earning over one million. And that the three year average of his total income from all sources was eight hundred and twenty nine thousand and above that amount. It was some change over that. Now, here, Susan's acknowledged the fact that that that Robert has had financial success well above that eight hundred or one million figure. He's been over that. He's been over one point four million. And she is not she's conceding the fact that maintenance should not be determined on that excess amount that he earned after marriage. However, we do submit that this was an error in calculation by excluding the other sources of income that Robert had when the trial court set a cap. And that the results of that is an artificially reduced amount of maintenance for Susan here. Thank you. Very well. Thanks both counsel for their arguments today. But actually, Justice Hutchins, do you have any other questions? I have no additional questions. Thank you. Justice Brennan. No additional questions. Thank you. The court thanks both counsel for your arguments today, particularly for participating remotely. This is obviously new for our court. The court will take the case under advisement and a written decision will be issued in due course. Thank you so much. Thank you.